## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARK BUSACK,

        Petitioner,

                                      **Criminal Action No. 5:14cr54**

**v.**                                     **Civil Action No. 5:15cv151**

                                      **(Judge Stamp)**

UNITED STATES OF AMERICA,

        Respondent.

## REPORT AND RECOMMENDATION

## I. Introduction

On November 30, 2015, the *pro se* petitioner, an inmate incarcerated at FCI Morgantown in Morgantown, West Virginia, filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. ECF No. 63.[1] Pursuant to a Notice of Deficient Pleading by the Clerk of Court, on December 10, 2015, the petitioner filed his motion on a court-approved form. ECF No. 70. Petitioner also moved for appointed counsel. ECF No. 71. On December 14, 2015, Petitioner filed a document titled "Amended Attachment Pages to the 2255 Motion." ECF No. 72. On December 28, 2015, Petitioner moved for leave to file excess pages, attaching a memorandum in support. By separate Orders entered January 5, 2016, Petitioner's motion for appointed counsel was denied and his motion for leave to file excess pages was granted. ECF Nos. 75 & 76. That same day, the memorandum in support was docketed as Supporting Brief for Motion to Vacate. ECF No. 77. Also on January 5, 2016, the undersigned made a preliminary review of the petition; found that summary dismissal was not warranted; and directed the respondent to file an answer. ECF No. 78.

---

[1] The citations in this Report and Recommendation are to the petitioner's criminal docket.

On January 11, 2016, Petitioner filed a Motion for Reduction in Sentence Due to an Error Discovered in Sentence Calculation in his criminal case. ECF No. 79. By Order entered January 11, 2016 by the District Judge, the Government was directed to respond. ECF No. 82. On January 14, 2016, Petitioner filed another Motion to Reduce Sentence. ECF No. 84. An Order was entered the same day by the District Judge, directing the Government to respond to this motion as well. ECF No. 85. On January 19, 2016, the Government filed a motion seeking a consolidated response deadline for Petitioner's motion to vacate and the two motions to reduce the sentence, contending that the claims contained in the motions to reduce the sentence should be construed as two additional grounds in support of Petitioner's motion to vacate. ECF No. 86 at 2. By Order entered the same day by the District Judge, the motion for a consolidated response deadline was granted. ECF No. 87.

On January 28, 2016, the Government filed its consolidated response to the motion to vacate and motions to reduce sentence. ECF No. 92. By Order entered February 2, 2016, Petitioner's second motion for appointed counsel was denied. ECF No. 94. On February 11, 2016, Petitioner replied to the Government's consolidated response. ECF No. 96. On February 16, 2016, Petitioner filed a Motion to File Exhibit, attaching a copy of an August 7, 2015 letter from Thadd P. Obecny, CPA to Petitioner's counsel. ECF No. 97.

On July 1, 2016, in the Fourth Circuit Court of Appeals, Petitioner filed a petition for mandamus, requesting that the Fourth Circuit "move the Northern District Court of West Virginia in the matter of his Motion pursuant to 28 U.S.C. 2255." ECF No. 126 at 5. As of the date of this Report & Recommendation ("R&R"), that petition is still pending.

This matter, which is pending before me for report and recommendation pursuant to LR PL P 2, is ripe for review.

## II. Facts

### A. Conviction and Sentence

On November 14, 2014, the petitioner signed a plea agreement in which he agreed to waive his right to have his case presented to a Grand Jury and to plead guilty to a five-count Information, charging him in Counts One through Four with Use of Unauthorized Access Device, in violation of 18 U.S.C. § 1029(a)(2), and in Count Five, with Filing False S Corporation Income Tax Return, in violation of 26 U.S.C. § 72016(1). In the agreement, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 11. Mr. Busack is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, and in exchange for the concessions made by the United States in this plea agreement, the defendant waives the following rights, if the Court sentences within the statutory maximums of the statutes of conviction:
>
> > a. to appeal any order, the conviction and the sentence or the manner in which that sentence was determined on any ground whatsoever, including those grounds set forth in 18 U.S.C. § 3742.
> >
> > b. to challenge the conviction or the sentence or the manner in which it was determined in any post-conviction proceeding, including any proceeding under Title 28, United States Code, Section 2255.
>
> Nothing in this paragraph, however, will act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct. The defendant agrees that there is currently no known evidence of ineffective assistance of counsel or prosecutorial misconduct.

ECF No. 7, ¶11 at 4.

Further, the plea agreement contained two stipulations as to Petitioner's relevant conduct:

> 3. Pursuant to Sections 6B1.4 and 1B1.3 of the Guidelines, the parties hereby stipulate and agree that the total relevant conduct of Count One through Count Four involved a loss of more than $400,000.00 but not more than $1,000,000.00, and 10 or more victims but not 50 or more victims, resulting in a 14-level

enhancement pursuant to Section 2Bl.l(b)(I)(H) and a 2-level enhancement pursuant to Section 2B1.1 (b)(2)(A), respectively.

In addition, the parties hereby stipulate and agree that the total relevant conduct of Count Five, as determined by the Tax Table under Section 2T4.1, is a Base Offense Level 16 (more than $80,000.00 but not more than $200,000.00 of tax loss).

The parties understand that pursuant to Section 6B1.4(d), the Court is not bound by the above stipulations, and if not accepted by the Court, Mr. Busack will not have the right to withdraw his plea of guilty.

Defendant reserves the right to argue for a downward variance pursuant to Title 18, United States Code, Section 3553(a) based upon his efforts to pay back the victims of the relevant conduct of Count One through Count Four.

Id., ¶3 at 2.

On December 16, 2014, the petitioner entered his plea in open court. After being sworn, petitioner was advised by the Court that the oath he had taken meant he must tell the truth. ECF No. 30 at 2 - 3. The Court instructed the petitioner to ask if there was anything he did not understand during the hearing, and to feel free to consult with counsel at any time. Id. at 3. Petitioner testified that he was fifty-one years old; had earned a bachelor of science in business management from Wheeling Jesuit College and completed two years toward his master's degree there; and that he had worked for 16 years in the banking industry. Id. at 3 – 4. Petitioner further testified that in 2000, he started his own company, and that he had run a mortgage company from 2004 until August of 2013. Id. at 4. Petitioner denied having consumed any medicine, drugs or alcohol within the previous 24 hours. Id. When asked by the Court whether he had ever been treated for any mental illness or addiction to narcotic drugs of any kind, petitioner denied that he ever had. Id. Petitioner testified that he could read, write, and understand the English language. Id. He further testified that he understood the purpose of the plea hearing that day, and denied

having any hearing impairment or other physical disability that would prevent his full participation in the hearing. Id.

The Assistant U.S. Attorney ("AUSA") then read or summarized each paragraph of the plea agreement in open court. Id. at 5 – 8. Petitioner advised the Court that he understood and agreed with all the terms and conditions of the plea agreement; had gone over it with his attorney before signing it; and that his attorney had answered any questions he had about it. Id. at 9. Further, he denied having any other "deals or side agreements with the Government," not contained within the plea agreement. Id.

The Court asked Petitioner if he understood that the Court was not bound by any recommendation or stipulation contained within the plea agreement, and if the Court later discovered, based upon an "independent investigation by the probation officer or on any other evidence" that it could not go along with the recommendations or stipulations of the agreement, that Petitioner would still be bound by his plea agreement and would not have a right to withdraw it. Petitioner answered "[y]es, Your Honor." Id.

The Court specifically asked Petitioner if he understood the waiver of appellate and post-conviction relief rights contained in the plea agreement, and Petitioner said that he did. Id. at 10 and 15. Specifically, the court advised Petitioner that he was waiving his right to seek post-conviction relief, subject to certain exceptions, such as ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an unconstitutionally impermissible purpose; Petitioner testified that he understood. Id. at 10. The Court asked Petitioner's counsel if he believed Petitioner understood the waiver of appellate and post-conviction relief, and counsel said that he did. Id. at 15.

The Court explained that the maximum sentence Petitioner could be exposed to on Counts One through Four would be no more than 10 years' incarceration, with a period of supervised release of not more than three years, and the maximum sentence Petitioner could be exposed to on Count Five would be not more than three years' incarceration and a period of supervised release of not more than one year. <u>Id.</u> at 12. Further, the Court explained, if Petitioner were on supervised release, he could, following a petition for revocation, a hearing on that petition, and a finding of revocation, be sentenced to further incarceration. <u>Id.</u> at 13.

The Court asked then asked Petitioner if he understood that the Court was not going to be able to determine what sentence would apply until after the PreSentence Investigation Report ("PSR") was completed, when Petitioner, his counsel, and the Government had all had an opportunity to review and make any objections to it, and Petitioner stated he understood. <u>Id.</u> at 14. The Court explained the concept of relevant conduct to Petitioner, advising him that when calculating his sentence, it could take into account any conduct, circumstances or injuries relevant to his crime, and petitioner said that he understood. <u>Id.</u> at 14 - 15. Petitioner further indicated that he understood that the Court had the authority in some circumstances to depart from the advisory guidelines and impose a sentence either more or less severe than that called for by the Guidelines. <u>Id.</u> at 15. The Court asked Petitioner if he understood that if the Court accepted his plea, and he ultimately received a sentence that was more severe than he had hoped for, he would still be bound by his plea and have no right to withdraw it, and petitioner said "[y]es, Your Honor." <u>Id</u>. at 16.

The Court then reviewed all the rights the petitioner was giving up by pleading guilty. <u>Id.</u> at 16 - 20. The Court inquired of defense counsel whether he believed that Petitioner fully understood the consequences of a guilty plea, and counsel said that he did. <u>Id.</u> at 20.

Next, the Government presented the testimony of Special Agent Joseph Sobocinski, of the Federal Bureau of Investigation in Wheeling, West Virginia, to establish a factual basis for the plea. Id. at 21 - 29.  The Government also presented the testimony of Tamela L. Devericks, IRS Criminal Investigation, to further establish a factual basis for the plea.  Id. at 30 – 37.  The petitioner did not contest either factual basis for the pleas. Id. at 29 and 37.

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Counts One through Five of the five-count Information. Id. at 37 - 38. The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. Id. at 38.  In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. Id.

When asked if his attorney had adequately represented him, Petitioner stated "[y]es, Your Honor."  Id. at 39.  He further stated that his attorney had left nothing undone. Id.  Finally, petitioner said that he was in fact guilty of the crimes to which he was pleading guilty.  Id.

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that the petitioner understood the consequences of pleading guilty, and that the elements of the crimes were established beyond a reasonable doubt.  Id. at 39 – 40.  The petitioner did not object to the Court's finding. At the close of the hearing, Petitioner was released on a personal recognizance bond, subject to certain exceptions. Id. at 40 - 41.

On August 17, 2015, the Court conducted a sentencing hearing excepting the final determination of the restitution amount. Petitioner was sentenced to 35 months imprisonment on all counts, to run concurrent with each other, a sentence below the middle of the guideline range of 33 – 41 months.  Petitioner received a three-year term of supervised release on Counts One – Four, with a one-year term of supervised release on Count Five, all to be served concurrently

with one another. ECF No. 80 at 39 - 40. Petitioner was ordered to pay $121,249.19 in restitution. ECF No. 61 at 4. Judgment was entered on August 18, 2015. ECF No. 49.

On September 24, 2015, an evidentiary hearing was held to finalize the amount of restitution. ECF No. 88. The total amount of restitution was again determined to be $121,249.19; of that, $86,790.52 was payable to the IRS and $34,458.67 to the 21 remaining access victims. Id. at 5. The Court directed that the access victims be paid first on a *pro rata* basis, and after that debt was discharged, then the IRS would be paid. Id. at 7. Petitioner was ordered to begin restitution payments immediately while incarcerated, through the Inmate Financial Responsibility Program ("IFRP"), but also during his term of supervised release. Id. at 5 – 6 and 8 - 9. Pursuant to a modification of a restitution order, an amended judgment was entered on September 28, 2015. ECF No. 60.

**B. Appeal**

Petitioner did not file a direct appeal.

**C. Federal Habeas Corpus**

The petitioner raises six grounds of ineffective assistance of counsel, asserting that counsel was ineffective for failing to

1) present facts that would have substantially altered outcome of the Plea Agreement and sentencing [ECF No. 70 at 5];

2) organize Petitioner's defense into a coherent presentation of the facts [Id. at 6];

3) pursue discovery [Id. at 8];

4) disclose a conflict of interest between the United States Attorney and Petitioner [Id. at 9 – 10];

5) prepare Petitioner for the sentencing hearing [Id. at 14];

6) failed to provide informed, effective counsel to represent Petitioner at his post-sentencing restitution hearing, because counsel himself was unable to attend, and instead, sent his partner, who knew nothing about the case. Id.

As relief, Petitioner requests that his sentence be reduced and recalculated once Count Five is determined to be incorrect by an audit of the 2012 Federal Income Tax returns. Further, he requests counsel and requests that "Mr. Obecny's accounting firm be appointed by the court to audit the returns." Id. at 13. Petitioner also requests that a different United States Attorney be appointed to this case, because of the "conflict of interest between Busack and . . . Ihlenfeld[.]" Id. at 15. He proposes that he receive an alternative plan for restitution and incarceration, suggesting release from prison to home confinement or to incarceration in the evenings, so that he could run his business during the day and "turn over all profits . . . except an amount deemed appropriate by the court to live on . . . [while operating] [t]he business . . . under the strict supervision of the Court's Financial Litigation Unit and my probation officer." He asserts that this would generate "$200.00 to $400.00 per day to help repay the amounts I owe to the victims and people" who lent him money. Id. Finally, he requests that "when Count Five . . . of the Plea Agreement is proven . . . incorrect by the audit of the 2012 Federal Income Tax Returns," [id.] that his restitution amount be reduced accordingly in his "amended sentence."

Petitioner's December 14, 2015 "Amended Attachment Pages" appears to be merely a refiling of original grounds already presented in the motion to vacate in single-spaced format, but now provided in double-spaced format. See ECF No. 72-1 at 1; Cf. ECF No. 72 at 1 – 4 and ECF No. 70 at 14 – 16. In Petitioner's January 5, 2016 Supporting Brief for Motion to Vacate, Petitioner reiterates his six grounds alleging counsel's ineffectiveness and provides a more factually detailed memorandum in support. ECF No. 77.

Petitioner's January 11, 2016 motion to reduce sentence, later construed as an additional ground for § 2255 relief, contends that

7) he is entitled to a sentence reduction because his Total Offense Level should have been 19 instead of 20, resulting in an error in calculating his sentence. ECF No. 79 at 2.

Petitioner's January 14, 2016 second motion to reduce sentence, filed on January 14, 2016, also subsequently construed as an additional ground for § 2255 relief, contends that

8) when calculating the specific offense characteristic of loss for the charges in Grounds One through Four of the Information, the Court failed to account for the repayments Petitioner had made during the course of the scheme. ECF No. 84 at 1.

## D. Government's Response

The Government argues that petitioner's motion should be dismissed or summary judgment granted in its favor because Petitioner has failed to state a claim upon which relief can be granted. In support, the Government contends that

1) Grounds Seven and Eight are barred by Petitioner's waiver; alternatively, they fail on their merits [ECF No. 92-1 at 17];

2) Petitioner's Ground One claims of counsel's ineffectiveness prior to the plea, for failing to present facts to the prosecution that would have substantially altered the outcome of the Plea Agreement and sentencing are belied by Petitioner's sworn statements at his Rule 11 hearing; have no merit; are unsupported by the record; and do not survive a Strickland analysis [id. at 19 – 20];

3) Petitioner's Ground Two claim that counsel was ineffective for failing to timely obtain bank records and misrepresented the sentence Petitioner would receive in his Plea Agreement lacks merit; is not supported by the record; and does not survive a Strickland analysis [id. at 20 – 21];

4) Petitioner's Ground Three claim that counsel was ineffective for failing to discover, organize, and present evidence to disprove his Ground Five tax conviction and the Automatic Clearing house ("ACH") electronic checking account withdrawals is belied by Petitioner's knowing and voluntary plea to the offense; has no merit; is unsupported by the record; and does not survive a Strickland analysis [id. at 21 – 22];

5) Petitioner's Ground Four claim that counsel was ineffective for failing to disclose to the Court a conflict of interest between Petitioner and the United States Attorney, i.e., that in 2006, Petitioner had briefly dated the U.S. Attorney's sister and ended the relationship over her

objection, has no merit; is unsupported by the record; and does not survive a <u>Strickland</u> analysis [<u>id.</u> at 22 – 25];

6) Petitioner's Ground Five claim that counsel was ineffective for failing to prepare Petitioner for his sentencing hearing and failing to "fill the pews" of the courtroom with Petitioner's supporters is insufficiently pled; unsupported by the record; and does not survive a <u>Strickland</u> analysis [<u>id.</u> at 24]; and

7) Petitioner's Ground Six claim that counsel was ineffective because he sent his partner, who was unfamiliar with Petitioner's case, to cover for him at Petitioner's restitution hearing, causing Petitioner to agree to participate in the BOP's Inmate Financial Responsibility Program ("IFRP") under duress, resulting in the immediate beginning of a $1,000.00/month restitution obligation payment is unsupported by the record and does not survive a <u>Strickland</u> analysis. Id. at 24 – 25.

## E. **<u>Petitioner's Reply</u>**

Petitioner's reply appears to be missing page 14. In the reply, Petitioner reiterates his arguments and attempts to refute the Government's on the same. ECF No. 96.

## III. <u>Analysis</u>

## A. **<u>Petitioner's Burden of Proof</u>**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." <u>Sutton v. United States of America</u>, 2006 WL 36859 *2 (E.D. Va Jan. 4, 2006).

## B. **<u>Applicable Law Regarding Petitioner's Waiver and Ineffective Assistance of Counsel Claims</u>**

## 1) **<u>Law Governing Waivers of Direct Appeal and Collateral Attack Rights</u>**

"... [T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains are only secure when "dispositions by guilty plea are accorded a great measure of finality." Id. The Fourth Circuit has recognized that the Government often secures waivers of both appellate and collateral attack rights "from criminal defendants as part of their plea agreements." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

Courts have routinely held that "defendants can waive fundamental constitutional rights such as the right to counsel, or the right to a jury trial." United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); citing United States v. Wiggins, 905 F.2d 51, 53 (4th Cir. 1990)(quoting United States v. Clark, 865 F.2d 1433, 1437 (4th Circ. 1989)). Specifically, the Fourth Circuit has held that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is 'the result of a knowing and intelligent decision to forgo the right to appeal.'" United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994) (citations omitted). However, a defendant still retains the right to appellate review on limited grounds, such as when a sentence above the maximum penalty provided by statute is imposed or when a sentence is imposed based on a constitutionally impermissible factor. Id. at 732. Furthermore, the Attar court recognized that a defendant cannot "fairly be said to have waived his right to appeal his sentence" on the ground that he was wholly deprived of counsel during sentencing procedures. Id.

Eleven years later, the Fourth Circuit determined there was no reason to distinguish between waivers of appellate rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220 n.2. The Fourth Circuit noted that all courts of appeals to have considered the issue have

"held that the right to attack a sentence collaterally may be waived so long as the waiver is knowing and voluntary." Id. at 220. The Lemaster court did not address whether the same exceptions that were noted by the Attar court apply to a waiver of collateral attack rights, but it did note that it saw "no reason to distinguish" between the two. Id. at 220 n.2; see also United States v. Cannady, 283 F.3d 641, 645 n.3 (4th Cir. 2000) (collecting cases where the court has determined that waivers of § 2255 rights are generally valid).

The Fourth Circuit has not yet issued a binding decision defining the scope of collateral attack waivers and so has not yet imposed on this Court a standard governing "the extent to which an ineffective assistance of counsel claim can be precluded by a § 2255 waiver." Braxton v. United States, 358 F. Supp. 2d 497, 502 (W.D. Va. 2005) aff'd. 214 F. App'x 271 (4th Cir. 2007) (per curiam). However, several courts have held that collateral attack waivers should be subjected to the same conditions and exceptions applied to waivers of direct appellate rights. Cannady, 283 F.3d at 645 n.3 (collecting cases). Furthermore, most courts of appeals have determined that waivers of collateral attack rights encompass claims "that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver are waivable." Braxton, 358 F. Supp. 2d at 503.

**2) Law Governing Whether a Waiver is Knowing and Intelligent**

The Fourth Circuit has held that the determination of whether a waiver of appellate and collateral attack rights is "knowing and intelligent" "depends 'upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused.'" Attar, 38 F.3d at 731 (quoting United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992)). This determination is often made upon reviewing the "adequacy of the plea colloquy" and determining, in particular, "whether the district court questioned the defendant about the

appeal waiver." <u>United States v. Blick</u>, 408 F.3d 162, 169 (4th Cir. 2005). However, an ultimate decision is "evaluated by reference to the totality of the circumstances." <u>United States v. General</u>, 278 F.3d 389, 400 (4th Cir. 2002).

### 3) <u>Standard Governing Claims of Ineffective Assistance of Counsel</u>

The Supreme Court has set forth a two-prong test for determining whether a convicted defendant's claim of ineffective assistance of counsel warrants the reversal of his conviction. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, "the defendant must show that counsel's performance was deficient." <u>Id.</u> Second, "the defendant must show that the deficient performance prejudiced the defense." <u>Id.</u> These two prongs are commonly referred to as the "performance" and "prejudice" prongs. <u>Fields v. Att'y Gen. of M</u>d., 956 F.2d 1290, 1297 (4th Cir.) *cert. denied*, 506 U.S. 885 (1992).

To satisfy the "performance" prong, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. However, a reviewing court does not "grade" trial counsel's performance, and there is a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." <u>Carter v. Lee</u>, 283 F.3d 240, 249 (4th Cir. 2002). Essentially, the reviewing court must not "second-guess" counsel's performance and must "evaluate counsel's performance 'from counsel's perspective at the time.'" <u>Hunt v. Lee</u>, 291 F.3d 284, 289 (4th Cir. 2002)(quoting <u>Strickland</u>, 466 U.S. at 689). Furthermore, the standard of reasonableness is objective, not subjective. <u>See</u> <u>Strickland</u>, 466 U.S. at 688.

To satisfy the "prejudice" prong, the defendant must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687. Therefore, if counsel's errors have no effect on the judgment, the conviction should not be

reversed. <u>See id.</u> at 691.  A defendant who alleges ineffective assistance of counsel following a guilty plea has an even higher burden: ". . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit has recognized that "[i]f the defendant cannot demonstrate the requisite prejudice, a reviewing court need not consider the performance prong." <u>Fields v. Maryland</u>, 956 F.2d at 1297.

**C. <u>Petitioner's Ineffective Assistance of Counsel Claims</u>**

   **1) <u>Petitioner's Claims of Ineffective Assistance Prior to the Plea Colloquy</u>**

**<u>Grounds One, Two, Three, and Four</u>**

**<u>Ground One</u>**

Petitioner's Ground One claim is that counsel failed to present facts to the prosecution that would have substantially altered the outcome of his plea and sentencing hearings. Specifically, he contends that at their initial meeting, he advised counsel that

1) he had already repaid "approximately $470,000 to clients" and still owed "approximately $25 to $35,000 to clients depending on how the final accounting of the mortgage files was completed [ECF No. 74 at 4];" and

2) the Government and IRS' allegations regarding his 2012 corporate tax returns were incorrect; he did not under-report his income by the amount of money he collected on his clients' credit cards as prepaid fees; the monies reimbursed to customers were not reported as expenses and therefore, business expenses were under-reported as well [<u>Id.</u> at 4 – 5].

Despite this, he contends that counsel never explored or investigated this line of evidence, and instead, "took for granted that the Prosecution was correct in its assertion that I owed additional Federal Income Tax for 2012." <u>Id.</u> at 5.

**<u>Ground Two</u>**

Petitioner's Ground Two claim is that counsel failed to consistently organize his defense into a coherent presentation of facts for the prosecution and the Court.  Specifically, he contends that

a) counsel misrepresented the Plea Agreement to him, by advising him that the maximum sentence he would receive under the guidelines was 23 - 29 months, and assuring him that because he had already repaid approximately $470,000 to clients before he received the U.S. Department of Justice's ("DOJ") target letter, he should receive a downward variance, resulting in a sentence of only probation or home confinement with restitution.  Id. at 5.

b) Also pre-plea, Counsel also promised to show in his pre-sentence memorandum that Petitioner's actions were "'avarent' [sic – aberrant] behavior and . . . not a lifestyle choice." Id. at 6.   In support thereof, counsel advised him that it would be critical to have witnesses to testify on Petitioner's behalf at sentencing, and said that he would "coordinate 'filling the pews' with . . . [Petitioner's] supporters; would contact these people and have them write letters of recommendation to present to the Judge at sentencing. Id.

c) Petitioner contends that counsel's defense was "piecemeal and reactionary at best;" his responses were prepared "at the last minute and in most instances were submitted to the Court without my opportunity to review what was written [id. at 7];" materials Petitioner requested that counsel procure from Flagstar Bank were not received until after the sentencing hearing, despite Petitioner's specific instructions as to what was needed and where it could be found;  despite repeated requests to counsel to obtain the records, counsel repeatedly forgot and had to ask Petitioner again to provide the request in writing; and when the information finally was obtained, after the sentencing hearing, "it did not contain the requested information that showed I had repaid my clients."  Id.

d) Petitioner contends that prior to the plea hearing, he provided counsel with copies of cancelled checks proving he had repaid "the majority of the clients [sic] monies that were owed and provided him with copies of the Excel Spreadsheets and wire transfer receipts showing that I had repaid the credit card processing companies in full for the amounts . . . owed[.]" Id. at 7 – 8. Nonetheless, at the plea hearing, counsel did not present this information to the United States Attorney or Court, making it appear as if Petitioner had made no attempt to repay those he owed.  As a result, the United States Attorney argued at the Rule 11 hearing that Petitioner still owed consumers "at least $80,000 when the correct amount was in the $35,000 range."  Id. at 8.  Petitioner contends that these inflated figures were published in the newspaper and other media, giving him further "unwarranted negative press." Id. When he asked counsel if the information about his repayments had been provided to the United States Attorney and the Court prior to the hearing, counsel said "no." Id.

e) Petitioner further argues that counsel spoke at length about having "expert witnesses testify on my behalf about what was going on in the mortgage industry at the time I encountered difficulties[,][Id.]" but nothing ever came of it and no expert testified on his behalf, not even Thadd O'Becny, the CPA that counsel hired to review his financial records. Id. at 8 – 9.

f) Petitioner contends that at the plea hearing, counsel was "timid and withdrawn;" not properly adversarial; did not cross examine the government's IRS witness; only cross examined the FBI agent assigned to the case by asking two questions; was not in control of the facts; provided an unrehearsed "off the cuff" presentation to the judge; and appeared "weak and ineffective."

Id. at 9 – 10.

**Ground Three**

Petitioner's Ground Three claim is that counsel was deficient for failing to pursue discovery, to organize and present evidence to prove that Count Five of the plea agreement was incorrect. ECF No. 70 15 8.

**Ground Four**

His Ground Four claim is that counsel was deficient for failing to disclose a conflict of interest between the United States Attorney and Petitioner, because Petitioner had briefly dated the United States Attorney's sister in 2006 and then broken off the relationship. ECF No. 74 at 14 - 15.

The undersigned finds that these four claims and their subparts all fall within the scope of Petitioner's collateral attack waiver, because they assert ineffective assistance of counsel for conduct occurring prior to the entry of Petitioner's guilty plea. See Lemaster, 403 F.3d at 220 & n.2; Cannady, 283 F.3d at 645 n.3; Attar, 38 F.3d at 731, 732; Braxton, 358 F. Supp. 2d at 503. A defendant who enters a voluntary guilty plea cannot later "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also Menna v. New York, 423 U.S. 61, 62 n.2 ("A

guilty plea, therefore, simply renders irrelevant those constitutional violations not logically inconsistent with the valid establishment of factual guilt and which do not stand in the way of conviction if factual guilty is validly established.").

The undersigned finds that Petitioner's limited waiver of his right to file a motion pursuant to 28 U.S.C. § 2255 was knowing and intelligent. See Attar, 38 F.3d at 731.

At the Rule 11 plea colloquy, Petitioner testified that he was 51 years old; had a business management degree and two years toward his master's degree; had worked for 16 years in the banking industry and had run his own business[es] since 2000. Plea Tr., ECF No. 30, at 3 – 4. He further testified that he was not on any type of medication or any treatment that would affect his ability to understand the plea hearing, nor did he have any hearing impairment or other disability that would prevent his full participation in the same. Id. at 4. The District Judge specifically asked Petitioner if he understood that he was giving up his right to appeal his conviction and sentence and his right to file a collateral attack, except for claims of ineffective assistance of counsel, sentence above a statutory maximum, and a sentence for an unconstitutionally impermissible purpose, and Petitioner replied that he understood. Id. at 10 and 15; see also Blick, 408 F.3d at 169. Petitioner also testified that he had reviewed the plea agreement with counsel before signing it. Id. at 9. At the conclusion of the plea colloquy, the District Judge found that Petitioner's plea was made freely and voluntarily, that Petitioner was competent to make a plea of guilty, that Petitioner had full knowledge and understanding of the consequences of his guilty plea, and that there was a basis in fact for the plea. Id. at 39 - 40.

A defendant's sworn representations made at a plea hearing "carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge, 431 U.S. at 74. Therefore, guilty pleas are not normally subject to collateral attack

but can be so challenged on the ground that the plea was not knowing or voluntary. Bousley v. United States, 523 U.S. 614, 621-22 (1998). A defendant may attack the voluntary nature of his plea by demonstrating that he received ineffective assistance of counsel. Tollett, 411 U.S. at 267. However, "in the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict Petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (citations omitted).

Here, at his Rule 11 hearing, Petitioner testified as follows regarding his attorney representation:

> THE COURT:  Mr. Busack, do you believe that your attorney, Mr. McCamic, has adequately and effectively represented you throughout all these matters?
>
> THE DEFENDANT:  Yes, Your Honor.
>
> THE COURT:  Do you believe that your attorney has left anything at all undone that you think he should have done on your behalf?
>
> THE DEFENDANT:  No, Your Honor.
>
> THE COURT:  Have you or your attorney found any defense to the charges made in Counts 1 through 5?
>
> THE DEFENDANT:  No, Your Honor.

Id. at 39.

Further, the Court inquired as to whether Petitioner understood that he was entering into a waiver of his collateral attack rights:

> THE COURT:  And Mr. Busack, do you understand that under paragraph eleven at page 4 of the plea agreement that you've agreed to waive your right to appeal the sentence for any of the reasons under the sentencing statute and also waived the right to any postconviction relief, including that under the so-called habeas corpus statute, subject to certain exceptions, such as ineffective assistance of counsel, sentence above a statutory maximum, and sentence for an unconstitutionally impermissible purpose. And do you understand that?

19

THE DEFENDANT:  Yes, Your Honor.

Id. at 10.  Accordingly, the undersigned finds that pursuant to Lemaster, 403 F.3d at 220 & n.2; Cannady, 283 F.3d at 645 n.3; Attar, 38 F.3d at 731, 732; and Braxton, 358 F. Supp. 2d at 503, these claims are all waived, because they assert ineffective assistance of counsel for conduct occurring before the entry of Petitioner's guilty plea.

## 2) Petitioner's Claims of Ineffective Assistance of Counsel After the Plea

Petitioner's remaining Ground Five and Six claims can be considered as counsel's conduct after the plea, but before, during, and after sentencing.

## Ground Five

In Ground Five, Petitioner contends that counsel was deficient for failing to prepare him for his sentencing hearing. Specifically, he argues that counsel went on vacation the week before his August 17, 2015 sentencing hearing and could only meet with him at 10:00 am on the day of the 1:00 p.m. sentencing hearing.  Further, he contends that despite having promised to "fill the pews" of the courtroom witnesses speak on his behalf, counsel "made no effort to have anyone at the hearing."  ECF No. 70 at 14.  Petitioner asserts that he provided counsel with contact information for "over thirty perspective [sic] witnesses" and had "at least eight people write letters of recommendation for me to the Judge" but counsel did not contact them or have them speak at his sentencing and despite Petitioner's request, never provided Petitioner with copies of the letters. ECF No. 74 at 17.  Petitioner again contends that at the meeting in counsel's office prior to the sentencing hearing, he asked counsel to go over the sentencing guidelines again and give him a "worst case" scenario estimate; he contends counsel told him his maximum sentence would be 33 months incarceration, in contrast to his earlier statement that his maximum sentence would be 23 – 29 months, apparently due to "a math error [counsel made] in computing the

sentence." Id. at 18.  Petitioner further avers that at sentencing, counsel called no mortgage professionals as witnesses to testify as to how the mortgage loan approval process had become more difficult in 2011 – 2013 to justify why Petitioner had "started to collect third party fees in advance on my client's [sic] credit cards [Id. at 19];" called no past mortgage clients who were satisfied with Petitioner's services; did not have his past and present accountants testify to explain how Petitioner's business expenses were under-reported; and called no character witnesses to rebut the Government's portrayal of him as a villain.  Id. In short, Petitioner contends that counsel did nothing to help him; nobody spoke on his behalf; and counsel "did the bare minimum to collect his fee and . . . walked me into a jail cell as a result." Id. at 20.

A review of the record indicates that counsel filed a sentencing memoranda on Petitioner's behalf on May 7, 2015 [ECF No. 33], a response to the government's supplemental sentencing memorandum regarding restitution on August 10, 2015 [ECF No. 41] and participated in the drafting of a September 23, 2015 Sealed Second Joint Supplemental Sentencing Memorandum.  ECF No. 55.  A review of the May 7, 2015 sentencing memorandum reveals that counsel argued that Petitioner was a previously law-abiding upstanding member of the business community and that his charged behavior was aberrant  [ECF No. 33 at 21], an argument also made at sentencing. ECF No. 80 at 8 – 11.  Further, counsel's May 7, 2015 sentencing memorandum argued vigorously for a substantial variance, i.e., a sentence of probation with or without home confinement, and a five year term of supervised release. ECF No. 33 at 18. In counsel's August 10, 2015 response to the Government's supplemental sentencing memorandum regarding restitution, counsel challenged factual discrepancies and the Government's claims regarding outstanding amounts still owed and/or repayments to victims, indicated that the verification of amounts already reimbursed was still ongoing, and attached copies of cancelled

checks proving certain reimbursements [ECF Nos. 41-1 – 41-7] and eight letters from persons attesting to Petitioner's character and/or statements of support.  ECF Nos. 41-8 – 41- 15.  In the September 23, 2015 Sealed Second Joint Supplemental Sentencing Memorandum, the final amounts of restitution still owed to access device victims and the IRS was summarized. ECF No. 55. Accordingly, it is apparent from the record that counsel's preparation and efforts on Petitioner's behalf at sentencing were substantial, and that counsel did indeed make many of the arguments Petitioner now contends he failed to make, and despite Petitioner's claims to the contrary, counsel did produce numerous witness statements on Petitioner's behalf.

Further, the undersigned finds Petitioner's argument as to counsel's allegedly mistaken estimates regarding sentencing unpersuasive. Several Circuits of the United States Court of Appeals have found that a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." Hughes v. United States, 2007 WL 841940 at *4 (W.D.N.C. 2007), citing United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993); Bethel v. United States, 458 F.3d 711, 717 (7th Cir. 2006), cert. denied, 127 S.Ct. 1027 (2007); United States v. Foster, 68 F.3d 86, 87-88 (4th Cir. 1995).  Furthermore, it has been noted that:

> [T]he sentencing consequences of guilty pleas (or, for that matter guilty verdicts) are extraordinarily difficult to predict.  Although the sentencing guidelines significantly restrict the sentencing discretion of the district courts, that discretion is still extensive, and predicting the exercise of that discretion is an uncertain art.
>
> Therefore . . . a mistaken prediction is not enough in itself to show deficient performance, even when that mistake is great[.]

Hughes, 2007 WL 841940 at *5, quoting United States v. Barnes, 83 F.3d 934, 940 (7th Cir. 1996).

Moreover, ". . .if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and the defendant." United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (*en banc*), *cert. denied*, 513 U.S. 1060 (1994). ". . . '[m]is-advice respecting sentencing possibilities' could not be a 'but for' cause of a guilty plea where the plea is 'based on risk information given . . . by the sentencing court.'" United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995) (citing United States v. Craig, 985 F.2d 175, 179-180 (4th Cir. 1993)). demonstrating that he received ineffective assistance of counsel. Tollett, 411 U.S. at 267.

Here, the undersigned finds that not only is Petitioner's claim that counsel misled him by predicting an incorrect sentence, whether it be a 23 - 29 months sentence, a 33-month sentence, or a downward variance sentence of only probation or home confinement with restitution, "palpably incredible" and "patently frivolous or false" [see Lemaster, 403 F.3d at 221] in light of Petitioner's contrary statements under oath during his plea hearing. Moreover, the plea hearing clarified any possible misadvice by counsel regarding sentencing. On three separate occasions during the Rule 11 colloquy, Petitioner was advised, and acknowledged under oath, that he understood that a specific sentence was unknown at that time. Specifically, the Rule 11 hearing included the following colloquy regarding sentencing:

> THE COURT: . . . Now, Mr. Busack, as to Counts 1 to 4, for each of those, by statute, the maximum period of incarceration would be ten years as to each count, not more than $250,000 fine to each count, not more than three years of supervised release. And as to Count 5, statutory penalty for incarceration would be not more than three years; for a fine, not more than $100,000; and a period of supervised release of not more than one year.

ECF No. 30 at 12. Further, the Court held this exchange with Petitioner:

THE COURT: . . . Now, Mr. Busack, although the federal sentencing guidelines are no longer mandatory but are advisory, they are still going to play a big part in your case, along with other sentencing factors. Now I'd like to ask you some questions that will help me understand your understanding of those advisory guidelines, at least as to how they apply to you in your case, along with other sentencing factors.

First of all, has Mr. McCamic discussed the advisory sentencing guidelines with you and has he explained to you how they would work in your case, along with other sentencing factors?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And do you understand that on the individual Counts 1 through 5, you cannot, in any event, receive a greater sentence than the statutory maximum that I've just explained to you. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Mr. Busack, do you understand that I'm not going to be able to determine what guideline sentence applies in your case until later date, when I've received a presentence report, you've received it, gone over it with Mr. McCamic, made objections to it, if you wished, and the government's had an opportunity to do the same thing. And do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you understand also that under a concept known as relevant conduct that this Court, in determining the total offense level for sentencing purposes under the guidelines, may take into account any conduct or circumstances or injuries relevant to the crime which you've been convicted. And do you understand that?

THE DEFENDANT: Yes, Your Honor.

Id. at 13 – 14.

Later, the Court further inquired about Petitioner's knowledge of sentencing:

THE COURT: And do you understand that after I've determined what advisory guidelines apply in your case, that I do have the authority, at least in some circumstances, to vary or depart from the guidelines and to impose a sentence that is either more severe or less severe than that called for by the guidelines. And do you understand that?

THE DEFENDANT: Yes, Your Honor.

Id. at 15.  The Court further inquired:

> THE COURT:  And do you understand that if I accept your plea of guilty and the sentence imposed upon you is more severe than you'd hoped for or expected, that you're still going to be bound by your guilty plea and are not going to have a right later on to withdraw it.  Do you understand that?
>
> THE DEFENDANT:  Yes, Your Honor.

Id. at 16. Finally, after Petitioner entered his pleas to the charges, this exchange was had:

> THE COURT:  **Has anybody promised or predicted to you what the exact sentence is going to be that you're going to receive as to these counts?**
>
> THE DEFENDANT: **No, Your Honor.**
>
> THE COURT: You understand none of us know what the exact sentence is going to be till we get the presentence report and then analyze it under the guidelines, along with other sentencing factors. And do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

Id. at 38 – 39. (emphasis added).

Accordingly, Petitioner's claim that counsel misadvised him regarding the maximum sentence he could receive must fail because even if true, at his Rule 11 hearing, the Court repeatedly clarified that his sentence at that time was unknown, and Petitioner admitted to understanding the court's advice. United States v. Lambey, 974 F.2d at 1395.  Moreover, as a result of counsel's efforts on his behalf, Petitioner received a sentence of only 35 months, far less than the maximum of ten years that he could have received on Counts One - Four, and below the middle of the guideline range of 33 – 41 months.   Even if counsel had been deficient, which the record does not reflect, Petitioner still cannot meet the prejudice prong of the Strickland test. He has not shown and cannot "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   Hill v. Lockhart, *supra* at 59.

**Ground Six**

In Ground Six, Petitioner contends that his counsel, Jay McCamic ("McCamic"), was ineffective for failing to provide informed, effective counsel to represent Petitioner at his post-sentencing restitution hearing, because McCamic was unable to attend and sent his partner, Rob McCoid ("McCoid") in his place. Petitioner avers that at a pre-restitution hearing meeting with McCoid on September 23, 2015, McCoid admitted he "knew nothing about the case." ECF No. 70 at 14. Petitioner met with McCoid again at the courthouse on September 24, 2015. He asserts that just prior to the restitution hearing, the United States Attorney informed McCoid that the Government wanted Petitioner to participate in the IFRP. Petitioner contends that he said he would do so if someone would explain the program to him and tell him the amount he would have to pay, but McCoid did not know, and even after the Probation Officer, the United States Attorney, the Assistant United States Attorney ("AUSA") entered the room, "nobody could explain how much I would be obligated to pay." Id. at 14. Accordingly, he avers that his decision to participate in restitution payments via the IFRP was "made under duress." Id. In his December 28, 2015 Supporting Brief, Petitioner inexplicably and simultaneously contends that '[a]s of the date of this brief, I still have not been told the amount I would have to pay monthly [ECF No. 74 at 21]" while admitting that at the September 24, 2015 restitution hearing he was directed to pay $1,000.00 a month "even while I am incarcerated." Id. at 22. Petitioner contends he was "dumbfounded" when McCoid did not object to this. Id. Further, Petitioner contends that he should "not have been required to ask question directly of the U.S. Attorney outside of the Court Room [sic] when my counsel was unable to represent me in the proper adversarial manner. In effect, I was representing myself." Id. at 22.

Petitioner's claim that he was never informed of the amount of his monthly IFRP payment, and his implied claim that was blindsided by the request to have him make that restitution via the IFRP because his representation at the restitution hearing was left to an uninformed and unprepared attorney, and that the agreement to do so was made "under duress" on September 24, 2015 at the restitution hearing is unsupported by the record. To the contrary, it is apparent from a review of the record that Petitioner had agreed to pay restitution through the IFRP long before the restitution hearing. The November 14, 2014 plea agreement, which Petitioner testified at his Rule 11 hearing that he had fully reviewed and discussed with McCamic, his original counsel, before signing, contains his agreement to do so:

> 14. Mr. Busack agrees that all monetary penalties imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States as provided for in Title 18, United States Code, Section 3613. Furthermore, Mr. Busack agrees to provide all requested financial information to the United States and the Probation Office and agrees to participate in any presentencing debtor examinations. Mr. Busack also authorizes the Financial Litigation Unit in the U.S. Attorney's Office for the Northern District of West Virginia to access his credit report from any major credit reporting agency prior to sentencing, in order to assess the financial condition for sentencing purposes. Mr. Busack agrees, under penalty of perjury, to complete a financial statement to be returned with the plea agreement. If the Court imposes a schedule of payments, Mr. Busack agrees that it will be deemed to be merely a minimum schedule of payments , not the only method available to the United States to enforce the judgment. **If Mr. Busack is incarcerated, he agrees to participate in the Federal Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.** In addition, Mr. Busack agrees that the United States, through the Financial Litigation Unit, may submit any unpaid criminal monetary penalty to the United States Treasury for offset, regardless of the defendant's payment status or history at the time of said submission.

ECF No. 7 at 5 (emphasis added). Moreover, as Petitioner admits, at the September 24, 2015 restitution hearing, he was clearly advised by the court that his restitution payments would be a minimum of $1,000.00 a month and would begin during incarceration and continue, if necessary, throughout supervised release. ECF No. 88 at 5 - 6. See also Amended Judgment, ECF No. 60 at

7 ("§G: Special instructions regarding the payment of criminal monetary penalties: The defendant shall immediately begin making restitution and/or fine payments of $ *1,000.00 per month, due on the *1st of each month . . . during incarceration, and if necessary, during supervised release.").  Moreover, Petitioner's Amended Judgment further specifies that "[a]ll criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to Clerk, U. S. District Court, Northern District of West Virginia, P.O. Box 1518, Elkins, WV 26241." Id.

Finally, a review of the restitution hearing transcript indicates that McCoid's performance at the very brief restitution hearing was more than adequate, given that the parties had already submitted their joint supplemental sentencing memorandum resolving all final issues the day before; McCamic, Petitioner's original counsel, was a co-signer of that memorandum, thus, there can be no suggestion that McCamic "abandoned" Petitioner to an attorney who was unprepared and forced to decide unfamiliar issues.

Accordingly, Petitioner has neither proved that McCamic was ineffective for delegating Petitioner's representation at the restitution hearing to McCoid, nor that McCoid was ineffective for permitting Petitioner to purportedly be blindsided by the decision to make monthly restitution payments through the IFRP. Because Petitioner cannot prove defective performance, he cannot prove prejudice, and thus this claim should be dismissed.

It is clear from the record that Petitioner, was well aware of the very favorable plea deal that McCamic successfully negotiated for him. Petitioner knew that the maximum potential sentence on each of the Counts One through Four were 10 years, and the maximum sentence on Count Five was 3 years.  He admitted under oath that he knew his actual sentence was a decision then-unknowable to all because it had yet to be decided; but because of the risk of a possible 10-

year sentence on each of the first four counts and a 3-year sentence on the fifth, should he proceed to trial, he entered into the plea agreement. Having now obtained the important benefits provided to him in the plea agreement, he now seeks to blame counsel because he did not receive even more concessions.

**D.  Petitioner's Ground Seven and Eight Claims of Error in Sentencing Calculation**

   As noted *supra*, Petitioner's Seven and Eight claims that he was incorrectly sentenced as a result of errors in the guideline calculation is unsupported by the record and falls squarely within his waiver of his collateral attack rights of the waiver of the right to "challenge the conviction or the sentence or the manner in which it was determined in any post-conviction proceeding, including under Title 28, United States Code, Section 2255," [ECF No. 7, ¶11(b) at 4], thus, they should be dismissed.

**IV. Recommendation**

For the foregoing reasons, the undersigned recommends that the Court **DENY** the petitioner's §2255 motion [ECF No. 63 and 70] and **DISMISS** this action from the Court's docket.

Further, the undersigned recommends that Petitioner's pending Motion to File Exhibit [ECF No. 97] be **DENIED as moot.**

**Within fourteen days (14)** after being served with a copy of this Recommendation with the Clerk of the Court, any party may file written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C.

§636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to the *pro se* petitioner at his last known address as reflected on the docket, and to electronically transmit a copy of this Report and Recommendation to all counsel of record.

DATED: November 7, 2016

**/s/** James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE